IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL MULLINS,

               Plaintiff,

vs.                                       Case No. 10-1089-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

               Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. <u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. <u>Glenn</u>, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On January 14, 2009, administrative law judge (ALJ) Edmund C. Werre issued his decision (R. at 7-14). Plaintiff alleges that he has been disabled since October 15, 2006 (R. at 7). Plaintiff is insured for disability insurance benefits through December 31, 2010 (R. at 7, 9). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability (R. at 9). At step two, the ALJ found that plaintiff had the following severe impairments:

4

osteoarthritis, cervical spine; myalgia; myositis; cephalgia; and fibromyalgia. Furthermore, the ALJ found that carpal tunnel syndrome was not a severe impairment (R. at 9). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 9). After determining plaintiff's RFC (R. at 10), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 12). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 12-14). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 14).

**III. Are the ALJ's RFC findings supported by substantial evidence and do they comply with the requirements of SSR 96-8p?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891

n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ made the following RFC findings in this case:

> The claimant can lift and/or carry 50 pounds occasionally, 25 pounds frequently. The

claimant can sit 6 hours in an 8 hour workday
and can stand and/or walk 6 hours in an 8
hour workday. He must alternate sit/stand
every 45 to 60 minutes. The claimant cannot
be exposed to temperature/humidity extremes
or loud noises. He cannot rapidly or
forcefully turn his head and cannot reach
overhead with the left non-dominant upper
extremity.

(R. at 10).

In support of his RFC findings, the ALJ noted that plaintiff had testified as follows:

...[plaintiff] was limited to lifting 50
pounds due to pain. He could walk about 2
blocks at a time before needing to rest and
could sit for 45 minutes to 1 hour before
needing to stand.

(R. at 10). The ALJ also noted that, according to the report by the consultative examiner, Dr. Padley, plaintiff had estimated that:

...he can sit for 1 ½ to 2 hours, stand for 3
hours, and walk for ½ mile before being
limited by discomfort.

(R. at 11, 264).

The ALJ indicated that he did not give substantial weight to the opinions of the state agency physicians because their opinions were inconsistent with the evidence (R. at 12).[1] The ALJ also indicated that he gave very little weight to the

---

[1]The ALJ referenced Exhibit 7F in making this finding (R. at 12). Exhibit 7F simply states that Dr. Siemsen "reviewed all the evidence in the file and the RFC and/or assessment of 1-9-07 is affirmed as written" (R. at 303). However, the record does not contain an assessment dated January 9, 2007.

7

opinions of Dr. Hartley, plaintiff's treating physician (R. at 12). Dr. Hartley stated on June 15, 2007 that plaintiff suffered from migraine and cluster headaches. He indicated that they occurred several times a week and lasted for more than 24 hours. He opined that plaintiff would not be able to work while suffering a headache (R. at 304-305). Dr. Hartley also prepared two mental medical source statements which ask the treating physician to indicate the patient's ability to perform sustained work on a regular and continuing basis, i.e., 8 hours a day, 5 days a week, or an equivalent work schedule (R. at 306, 308). In the most recent one, dated August 12, 2008, Dr. Hartley found that plaintiff was moderately limited in 13 categories, and markedly limited in 7 categories. Dr. Hartley found that plaintiff was markedly limited in the ability to understand, remember, and carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to complete a normal workday without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to respond appropriately to changes in the work setting, and the ability to be aware of

normal hazards and take appropriate precautions (R. at 308-309).[2]

Regarding the sufficiency of the ALJ's RFC findings, defendant conceded that the ALJ failed to link his RFC findings to specific evidence, which normally constitutes reversible error (Doc. 16 at 13). However, the ALJ argues that this case falls within the exception described in Howard v. Barnhart, 379 F.3d 945 (10th Cir. 2004).

In the case of Howard v. Barnhart, 379 F.3d 945, 947, the court stated the following:

> First, [claimant] challenges the ALJ's RFC assessment as conclusory and lacking the support of substantial evidence in the record. We agree that the lack of analysis accompanying the ALJ's RFC determination is troubling; we have urged ALJs to include reasoning in their decisions to make appellate review not only possible but meaningful. See Barnett v. Apfel, 231 F.3d 687, 689 (10th Cir.2000). However, our careful review of the record on appeal in light of the deferential appellate standard leads us to conclude that substantial evidence in the record supports the ALJ's RFC determination in this particular case.
>
> Claimant cites to Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir.1996), arguing that the ALJ must, as a matter of law, discuss the evidence and give reasons for his decision. We reject this broad argument because we conclude that Clifton is distinguishable. First, the step three decision described in

---

[2]In the June 15, 2007 mental assessment, Dr. Hartley had found that plaintiff was extremely limited in 9 categories, markedly limited in 6 categories, and moderately limited in 4 categories (R. at 306-307).

> Clifton is far more cursory than the RFC
> determination here; in this case, the ALJ
> discussed all of the relevant medical
> evidence in some detail.  **Second, and perhaps
> more importantly, in this case none of the
> record medical evidence conflicts with the
> ALJ's conclusion that claimant can perform
> light work.  When the ALJ does not need to
> reject or weigh evidence unfavorably in order
> to determine a claimant's RFC, the need for
> express analysis is weakened.**

(emphasis added).  The court went on to find that there was no medical evidence regarding claimant's knee injury which contradicted the ALJ's conclusion that she retained the capacity to perform light work.  Furthermore, the court noted that plaintiff's testimony at the hearing about her daily activities and limitations did not suggest that she cannot perform light work.  Therefore, the court concluded that substantial evidence supported the ALJ's RFC determination.  379 F.3d at 948.

As a preliminary matter, it should be noted that, for purposes of step five, an RFC assessment is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A regular and continuing basis means 8 hours a day, 5 days a week, or an equivalent work schedule.  SSR 96-8p, 1996 WL 374184 at *1,2, and 8 n.2.  In the case before the court, the ALJ found at step five that plaintiff could perform other work that exists in significant numbers in the national economy.

Unlike Howard, in the case before the court, there is

medical evidence that conflicts with the ALJ's RFC findings.  Dr. Hartley opined that plaintiff is unable to work when suffering from a headache; Dr. Hartley indicated that plaintiff has such headaches several times a week, and that they last for more than 24 hours.  Dr. Hartley also stated that plaintiff has a number of mental limitations that impact his ability to work on a regular and continuing basis (R. at 304-309).  The ALJ does not cite to any medical evidence to support his finding that plaintiff is able to work on a regular and continuing basis in spite of his migraine headaches.

Furthermore, unlike Howard, plaintiff's testimony clearly suggests that he is unable to work on a regular and continuing basis because of his impairments, including migraine headaches.  Plaintiff testified that when he was working, he would have 3-4 bad days a week, but that since he stopped working, he has approximately 3 or less headaches a month now (R. at 30-31).  He also testified that when he worked, the headaches could go on for days at a time; now that he is not working, it is usually less than a day.  When he gets a headache, he is sensitive to light and noise, and when it is full-blown, he has to lay down in a dark room until it subsides (R. at 31).  Plaintiff stated that Dr. Hartley told him that it would be easier for Dr. Hartley to manage plaintiff's impairments if he were not working (R. at 29).  Plaintiff also testified that when he takes medication, it causes

blurry vision, and it causes him to have trouble concentrating
(R. at 34-35). He also testified that he has to go to bed when
he takes the medication, stating that "it's lights out pretty
much" (R. at 35). Plaintiff also indicated that although he has
helped a friend out on some remodeling projects, it is less than
3 hours a day, and that he had worked only 15 or 20 days total
for 3 hours a day (R. at 27). Plaintiff further stated that he
often needs to rest every hour or two, but that sometimes he
could go three hours without resting (R. at 34).

The medical records of Dr. Hartley are also consistent in
many respects with plaintiff's testimony. On December 13, 2006
and January 12, 2007, Dr. Hartley's notes state that:

> Now that he is not working, the myofasciitis
> is improving. The lack of workplace
> aggravation may offer the opportunity to
> involve some resources that will be very
> helpful in relieving the symptoms. The
> severe headaches are less frequent.

(R. at 277, 273). On October 12, 2007, Dr. Hartley's notes state
that:

> He continues to feel better after leaving the
> work environment. His headaches have reduced
> in frequency and are more easily managed.

(R. at 333). Dr. Hartley indicated on October 12, 2007 and
August 12, 2008 that plaintiff had dysfunctions due to
symptoms/illness that interfere with usual daily activities, work
performance/attendance, and normal sleep patterns (R. at 312,
333). Dr. Hartley also opined that plaintiff had either marked

12

or extreme limitations in the ability to maintain attention and concentration for extended periods (R. at 308, 306); this is consistent with plaintiff's testimony that a side effect of plaintiff's medication is that he has trouble concentrating or staying on task when he takes it (R. at 34-35).

In Howard, neither the medical evidence nor the testimony of the claimant conflicted with the ALJ's RFC findings. According to Howard, the need for the ALJ to provide the express analysis for his RFC findings[3] is weakened only "when the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC." 379 F.3d at 947. In the case before the court (Mullins), both the medical opinion evidence from plaintiff's treating physician and plaintiff's testimony indicate that plaintiff is unable to work on a regular and continuing basis because of his migraine headaches. This evidence clearly conflicts with the ALJ's RFC finding that plaintiff can perform work, subject to various limitations, on a regular and continuing basis. Therefore, unlike the case in Howard, both the medical evidence of the treating physician and the testimony of the plaintiff were rejected or weighed unfavorably by the ALJ. See Heslop v. Astrue, 2007 WL 4302081 at *6-7 (D. Kan. Dec. 5, 2007).

---

[3]The express analysis that is required for an ALJ's RFC findings is set forth in SSR 96-8p.

This case clearly does not fall within the exception described in Howard. As defendant concedes, the ALJ did not cite to any evidence in support of his RFC findings. For these reasons, the case shall be remanded in order for the ALJ to make RFC findings in accordance with the requirements of SSR 96-8p.[4]

The court is also concerned with the lack of any evidence, medical or otherwise, that support the ALJ's RFC findings. In the case of Fleetwood v. Barnhart, 211 Fed. Appx. 736 (10th Cir. Jan. 4, 2007), the court held as follows:

> **...no other medical evidence in the record specifically addresses her ability to work...To the extent there is very little medical evidence directly addressing Ms. Fleetwood's RFC, the ALJ made unsupported findings concerning her functional abilities. Without evidence to support his findings, the ALJ was not in a position to make an RFC determination.**
>
> The ALJ's inability to make proper RFC "findings may have sprung from his failure to develop a sufficient record on which those findings could be based." Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir.1994). **The ALJ must "make every reasonable effort to**

---

[4]Furthermore, in support of his finding that plaintiff can perform medium work, the ALJ asserted that plaintiff testified that he was limited to lifting 50 pounds due to pain (R. at 10). However, the ALJ failed to mention that plaintiff testified that this weight limitation was placed on him when he went to work at Wesley Hospital, where he worked from 1980-1994 (R. at 34, 28, 241). The ALJ did not ask the plaintiff what his limits were on lifting since the alleged onset date of disability, October 15, 2006. Because this case is being remanded, the ALJ should attempt to ascertain plaintiff's lifting limitations on or after plaintiff's alleged onset date.

14

> **ensure that the file contains sufficient evidence to assess RFC." Soc. Sec. R. 96-8p, 1996 WL 374184, at \*5**. Because the disability hearing is nonadversarial, an ALJ is obligated to develop the record even where, as here, the claimant is represented by counsel. Thompson v. Sullivan, 987 F.2d 1482, 1492 (10th Cir.1993); accord Hawkins v. Chater, 113 F.3d 1162, 1164, 1168 (10th Cir.1997). Even though Ms. Fleetwood's counsel did not request any additional record development, the need for additional evidence is so clearly established in this record that the ALJ was obliged to obtain more evidence regarding her functional limitations. See Hawkins, 113 F.3d at 1167-68.

Fleetwood, 211 Fed. Appx. at 740-741 (emphasis added). Because the ALJ's RFC assessment was not based on substantial evidence, the court reversed the district court's affirmance on this issue and remanded the case with directions to remand to the Commissioner for further proceedings. 211 Fed. Appx. at 741.

As was the case in Fleetwood, the ALJ in the case before the court had no evidence to support his RFC findings, and was therefore not in a position to make an RFC determination. When this case is remanded, the ALJ must make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. Therefore, on remand, the ALJ should consider recontacting plaintiff's treating physician(s) in order to determine if additional information or clarification is available (20 C.F.R. § 404.1512(e)(1)), and/or obtain a detailed examination from a consulting physician which addresses plaintiff's functional limitations. Fleetwood, 211 Fed. Appx. at 741; Lamb v. Barnhart,

15

85 Fed. Appx. 52, 57 (10th Cir. Dec. 11, 2003). The ALJ could also consider having a medical expert testify at the hearing regarding plaintiff's RFC after reviewing the record.[5]

**IV. Other issues raised by plaintiff**

Plaintiff has raised other issues in his brief, including the weight to be accorded to the opinions of Dr. Hartley, the treating physician, and the ALJ's consideration of plaintiff's credibility. The court will not reach these remaining issues because they may be affected by the ALJ's resolution of the case after obtaining additional evidence, including medical opinion evidence regarding plaintiff's RFC, making findings in accordance with SSR 96-8p, and taking into account the consistency between the opinions of Dr. Hartley and the testimony of the plaintiff. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

The court will briefly address two other issues raised by the plaintiff. In his decision, the ALJ stated that plaintiff

---

[5] The U.S. Supreme Court has considered the use of medical advisors at administrative hearings and approved of the concept. Richardson v. Perales, 402 U.S. 389, 408 (1971). Such opinions are competent evidence and in appropriate circumstances may constitute substantial evidence supporting the ALJ's decision. Lopez v. Apfel, 1997 WL 758831 at *2 (10th Cir. Dec. 9, 1997)(ALJ properly relied on opinions of medical advisor and consulting physicians who disagreed with treating physician on issue of disability); Torres v. Secretary of HHS, 870 F.2d 742, 744 (1st Cir. 1989)(the testimony of a medical advisor who reviews the record, testifies and is subject to cross-examination may constitute substantial evidence depending on the circumstances, including the nature of the illness and the information provided to the advisor).

16

helps his disabled wife, who has Parkinson's disease. The ALJ asserted that this activity is inconsistent with his alleged disabling symptoms (R. at 11). However, plaintiff's testimony, when asked if he helps her when his wife is having bad days, was that he does help her "as much as I can" (R. at 25). He further testified that their daughter comes in to help her on those bad days (R. at 25). Such limited activity is not inconsistent with his alleged disabling symptoms. See <u>Draper v. Barnhart</u>, 425 F.3d 1127, 1130-1131 (8th Cir. 2006).

Plaintiff also argues that the ALJ failed to address the statements of two third-party witnesses in his decision (Doc. 11 at 16). On remand, the ALJ shall address their statements in accordance with <u>Blea v. Barnhart</u>, 466 F.3d 903, 915 (10th Cir. 2006).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 12th day of April 2011, Topeka, Kansas.

<u>s/ Sam A. Crow</u>
Sam A. Crow, U.S. District Senior Judge